

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CASE NO. 1:07-CR-70** |
| | § | |
| **RONALD CHAD FERGUSON** | § | |

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S FIRST MOTION TO SUPPRESS

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court, Eastern District of Texas, this proceeding is before the undersigned United States Magistrate Judge upon referral from the District Court. By order, the District Court referred the Defendant's *Motion to Suppress* [Clerk's doc. #45] to this Court for entry of findings of fact and a recommended disposition on the motion.

**A.**     **Background**

On April 23, 3007, Defendant Ronald Chad Ferguson (hereinafter "Ferguson") was charged by Criminal Complaint [Clerk's doc. # 1]. The Complaint alleged that on or about October 6, 2005, in the Eastern District of Texas, Ferguson knowingly and intentionally possessed a firearm during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c). *Id.* In addition, the Complaint also charged Ferguson with being a felon in possession of

–1–

a firearm, in violation of Title 18, United States Code, Section 922(g)(1).   *Id.*

On May 2, 2007, a federal grand jury sitting in the Eastern District of Texas indicted Ferguson. *See Indictment* [Clerk's doc. # 16].   Count I of the Indictment charged Ferguson with possessing a Ruger 9 mm pistol after being convicted of a felony.   Count II charged Ferguson with possession of that same pistol in furtherance of a drug trafficking crime, namely, possession with the intent to distribute "ecstasy".

On July 11, 2007, the federal grand jury returned a six-count Superseding Indictment against Ferguson [Clerk's doc. # 39].   Count I charged Ferguson with possession of the Ruger 9 mm pistol after having been convicted of a felony offense, in violation of Title 18, United States Code, Section 922(g)(1).   Count II charged Ferguson with possession of the Ruger 9 mm pistol in furtherance of a drug trafficking crime, that is, the possession with the intent to distribute "ecstasy", in violation of Title 18, United States Code, Section 924(c).   Count III charged Ferguson with possession with the intent to distribute "ecstasy", in violation of Title 21, United States Code, Section 841(a)(1). In Count IV, Ferguson was charged with possession of methamphetamine with the intent to distribute it, in violation of Title 21, United States Code, Section 841(a)(1).   Finally, in Count V, Ferguson was charged with possession of a Russian SKS firearm after having been convicted of a felony offense, in violation of Title 18, United States Code, Section 922(g)(1).

On August 10, 2007, Ferguson filed his *Motion to Suppress.* [Clerk's doc. # 45], now before the Court.   The Government responded with its *Motion in Opposition to Defendant's First Motion to Suppress and Request for Judicial Notices* on August 22, 2007 [Clerk's doc. # 52].   On September 27, 2007, this Court conducted a hearing on the motion to suppress.   Having heard the evidence and arguments and considered the briefs, the Court now enters its findings and report and

recommendation on the motion.

**B.      Facts Adduced at the Suppression Hearing**

The Court summarizes the following facts presented with the parties' briefs and as set forth by testimony at the suppression hearing.  At the hearing, retired Jasper County Judge Joe Neil Frank and Constable Gerald McAdams of Jasper County, Precinct 5, testified on behalf of the Government.

On September 20, 2005, in advance of Hurricane Rita's landfall on the Texas Gulf Coast, Texas Governor Rick Perry issued a disaster proclamation pursuant to Chapter 418 of the Texas Government Code.  *See* TEX. GOVT. CODE. §§ 418.014 *et. seq.*

On September 24, 2005, the Texas Gulf Coast was devastated by Hurricane Rita.  The devastation continued many miles inland, including into Jasper County, Texas.  Many of the citizens of Jasper County evacuated and left the area.  Due to the damage to the infrastructure and lack of electricity throughout the entire county, many of the citizens were unable to return to their residence for an extended period of time. In light of these circumstances, upon the advisement of the emergency management coordinator for Jasper County, Jasper County Judge Joe Neil Frank imposed an 8:00 p.m. to 8:00 a.m. curfew in Jasper County after Hurricane Rita hit.   Judge Frank ordered Sheriff Ronnie McBride to enforce the curfew.  At the time he issued the curfew, he was unsure of the exact statutory authority under which he could do so because he had never had to set a curfew before and the damage caused by Rita was unlike anything he had faced before as County Judge. Upon questioning, Judge Frank later affirmed that in retrospect he had set the curfew pursuant to the Texas Disaster Act, the same provision under which  Governor Perry had issued his disaster proclamation.  The Mayor of Jasper had also issued a twenty - four (24) hour curfew in the

City of Jasper.

During this time frame, on October 6, 2005, Jasper County Constable Gerald McAdams was on patrol near the Rayburn Country Resort, located in his precinct in Jasper County.[1]  At approximately 10:57 p.m. that night, he observed a red Ford Mustang departing the parking lot of an apartment/condo complex.  To enforce the curfew and to investigate the circumstances of the vehicle being in the area, McAdams conducted a traffic stop.  At the hearing, McAdams described how he was suspicious of the vehicle for several reasons, including the facts that the vehicle was out after the curfew; that there was no power in the area and the area was pitch black, McAdams knew that approximately only one person had remained in that apartment complex; and that there had been reports of criminality, including looting and theft of generators and gasoline in the immediate area where McAdams was patrolling.

Upon conducting the traffic stop, McAdams identified Ferguson as the driver of the vehicle and Ashley Sawyer was identified as the front seat passenger. Upon questioning by McAdams, Ferguson stated that he was visiting friends, which McAdams found suspicious since there was a only a few residents still in the area.   Ferguson was unable to provide a driver's license or identification.  McAdams discovered through a records check that Sawyer had an active warrant for her arrest.  Adams asked Ferguson and Sawyer to exit the vehicle and placed them both in handcuffs for his safety.[2]

McAdams requested consent to search the vehicle from Sawyer, the registered owner, and

---

[1]     According to the testimony, at this time the curfew issued by Judge Frank was still in force.

[2]     McAdams testified that Ferguson and Sawyer were placed in handcuffs for officer's safety due to the fact that McAdams was alone and, due to the circumstances of the aftermath of the hurricane, back-up might be difficult to obtain in an emergency situation.

Sawyer consented to the search.  During a search of the vehicle, McAdams found a small yellow pill with the emblem of a leaf on it on the driver's side floorboard of the vehicle.  The pill was identified as ecstasy.  A small amount of marijuana was discovered in a backpack found on the backseat of the vehicle, behind the driver's seat.  Mr. Ferguson volunteered that the backpack was his.  McAdams also found a loaded 9 mm pistol underneath the passenger seat.  McAdams further testified that he found methamphetamine inside a small tin box inside of a pink purse located on the back floorboard of the car.  Other items of drug paraphernalia were also located in the car, including a small digital scale and a small scoop.

After the discovery of the drugs and firearm, McAdams advised Ferguson and Sawyer of their *Miranda* rights.  Ferguson subsequently stated that Sawyer had "nothing to do with this stuff".

Constable McAdams testified that he had called for backup during the course of the stop.  Deputy Y'Barbro responded and ultimately transported Ferguson and Ms. Sawyer to the Jasper County Jail.  During the booking process at the jail, jailers and Deputy Y'Barbo searched Ferguson and discovered an additional twenty-five (25) MDMA ("ecstasy") tablets bearing an imprint that matched the imprint on the pill discovered on the driver's side floorboard during the search of the car.

## C.    **Ferguson's Motion**

In his motion to suppress, Ferguson argues that the discovery of the ecstasy pills, the handgun, and methamphetamine were the result of an illegal stop, arrest, and search.  He contends that there was no probable cause or reasonable suspicion to stop the vehicle he was driving.  He also urges the Court to suppress his statements which were made to law enforcement officers and contends that these statements are inadmissible in that they were "fruit of the poisonous tree".  At

the hearing, Mr. Ferguson presented additional arguments in support of the motion to suppress at the hearing, including contentions about the validity of the curfew enacted by Judge Frank.

**D.**   **Analysis**

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. AMEND. IV.   Traffic stops are deemed seizures for the purposes of the Fourth Amendment.  *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001).  The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  *See Knowles v. Iowa*, 524 U.S. 113, 117, 119 S. Ct. 484, 142 L. Ed.2d 492 (1998); *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed.2d 317 (1984).  Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place."  *Terry*, 392 U.S. at 19-20, 88 S. Ct. 1868.

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.  *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005), *cert. denied* 546 U.S. 1222 (2006).  "The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed.2d 740 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed.2d 621 (1981)).  The Fifth Circuit has stated that reasonable suspicion exists when an officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant

–6–

the search and seizure.  *See, e.g., United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).  In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. *Arvisu*, 534 U.S. at 274, 122 S.Ct. 744.  In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice.  *Terry*, 392 U.S. at 27, 88 S.Ct. 1868.  It is also clear, however, that reasonable suspicion need not rise to the level of probable cause.  *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744.

As for the second prong of the *Terry* inquiry**,** generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop ..."  *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)(en banc).  In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check to investigate whether the driver has any outstanding warrants and if the vehicle is stolen.  *Id.* at 507-08.  An officer may also ask the driver about the purpose and itinerary of his trip.  *Id.* at 508. Indeed, the officer's questions need not even be related to the purpose of the traffic stop since "[d]etention, not questioning, is the evil at which *Terry's* second prong is aimed." *Id.* (quoting *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993)).  Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter prolongs the detention. *Brigham*, 382 F.3d at 510; *see also Santiago*, 310 F.3d at 341-42; *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000); *United States v. Dortch*, 199 F.3d 193, 200 (5th Cir. 1999).  A recognized exception to that rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, the detention may continue until the new reasonable suspicion has been dispelled or confirmed.  *See Brigham*, 382 F.3d at 507; *United States*

*v. Grant*, 349 F.3d 192, 196 (5ᵗʰ Cir. 2003), *cert. denied* 540 U.S. 1227 (2004).

### 1.     The Initial Stop

On September 20, 2005, in advance of Hurricane Rita's landfall on the Texas Gulf Coast, Texas Governor Rick Perry made a disaster proclamation wherein he proclaimed the existence of the threat and directed that all necessary measures both public and private as authorized under Section 418.015 of the Texas Government Code be instituted.  The provision of the Chapter 418.108(g) of the Texas Government Code, "The Texas Disaster Act of 1975" in effect at the time of Hurricane Rita, specifically provided that in such disaster situations, "the county judge or the mayor of a municipality may control ingress to and egress from a disaster area under the jurisdiction and control the movement of persons and the occupancy of premises in that area." TEX. GOVT. CODE § 418.108(g) (Vernon 2005).[3]

Therefore, under the proclamation, an imposition of a curfew was proper.  Judge Frank was empowered by law to declare a curfew and restrict the movement of individuals in Jasper County, Texas.  Cases have consistently held that it is a proper exercise of police power to respond to emergency situations with temporary curfews that might curtail the movement of persons who otherwise would enjoy freedom from  restriction. *Smith v. Avino,* 91 F.3d 105, 109 (11ᵗʰ Cir. 1996)(addressing curfew imposed due to Hurricane Andrew), abrogated on other grounds by *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L. Ed.2d 210 (1998)

The testimony established that Judge Frank imposed an 8:00 a.m. - 8:00 p.m. curfew and McAdams was ordered to enforce the curfew.  McAdams testified that he spotted Ferguson's

---

[3]Section 418.018 was amended in June 2007, at which time the language changed.  However, the provision of the Texas Disaster Act cited above reflects the statute at the time in question, October 2005.

vehicle at approximately 10:57 p.m., which was in violation of the curfew.  Therefore, this Court finds that McAdams reasonably believed that Ferguson was in violation of the curfew and did not act unreasonably in conducting a traffic stop in this instance.  *See State of Louisiana v. Severin*, (La. App. 5 Cir. 04/11/07), 958 So.2d 21, 24 (officer had reasonable and trustworthy information to believe that defendant was violating curfew imposed after Hurricane Ivan and had probable cause to arrest).  This Court finds that Ferguson's presence in the area during the effective hours of the curfew constituted a violation of the law.  McAdam's initial contact with Ferguson to investigate the curfew violation was lawful and proper under the Fourth Amendment.

At the hearing, Ferguson's counsel suggested that the curfew may have been improperly implemented in that Governor Perry's September 20, 2007 proclamation prospectively declared that Hurricane Rita posed a threat of imminent danger along the Texas coast.  Counsel asserted that Jasper County is not a coastal county.  Further, counsel suggested that the curfew may not have had legal force since testimony does not indicate that a notice of an order proclaiming a local state of disaster was filed with the county clerk as provided under Section 418.108(c) of the Texas Government Code.

Even assuming that the curfew was invalid due to a procedural defect, and Ferguson had actually been arrested for the curfew violation, suppression of the evidence would not be required. *See Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)(the later invalidity of an ordinance does not undermine the validity of the arrest made for the violation of that ordinance and the evidence discovered in a search incident to arrest should not be suppressed). Ferguson was not arrested for violating the curfew, the apparent curfew violation was merely was one of two reasons why McAdams initiated the traffic stop.  It follows that a procedural defect, if

– 9 –

any, which may possibly render the curfew invalid would not in any way make McAdam's initial stop unreasonable when the record reflects that McAdams had a good faith basis for believing that the curfew was lawful and valid.

Further, this Court factually finds that McAdams also had articulable reasonable suspicion to stop Ferguson's vehicle and conduct a limited investigation.  As stated above, in *Terry,* the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.  392 U.S. at 30, 88 S.Ct. 1868.  While "reasonable suspicion" is a less demanding standard that probable cause and requires a showing considerably less that preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.  *United States v. Sokolow,* 490 U.S. 1,7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).  The officer must be able to articulate more than just an inchoate and unparticularized suspicion or hunch of criminal activity.  *Terry, supra,* at 27, 88 S.Ct. 1868.

An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.  *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).  However, officers are not required to ignore the relevant characteristics of a location in determining whether circumstances are sufficiently suspicious to warrant further investigation.  *Id.*  Accordingly, the Supreme Court has noted that the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in the analysis.  *Id.*

McAdams was aware that in the aftermath of the hurricane, residents in the area had numerous articles of property stolen from their residences and had subsequently put up barricades

and manned them themselves to discourage looting. In addition, McAdams had received calls about suspicious vehicles. He observed Ferguson's vehicle leaving the parking lot of the condo complex and knew that the complex was without power and that very few residents had remained at the complex. Ferguson's conduct in exiting the dark, vacant complex could have an innocent explanation. However, even in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation.[4] *Illinois v. Wardlow*, 120 S.Ct. at 677.

This Court concludes that conduct encountered by McAdams was similar to the conduct of the suspects encountered by the officer in *Terry*. Under *Terry*, McAdams had a particularized, reasonable suspicion of wrongdoing and was therefore entitled to initiate contact with Ferguson to investigate the matter further. Therefore, the initial stop of Ferguson's vehicle was lawful and proper in this regard.

Once Constable McAdams stopped Ferguson's vehicle, he had the right to converse with Ferguson about who owned the vehicle, his destination, etc. Simple questioning, even on a subject unrelated to the purpose of the stop, is not a Fourth Amendment violation.[5] *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993)).

### 2.   **Handcuffing**

This Court finds that McAdams did not commit a constitutional violation by handcuffing Ferguson and Sawyer. The Fifth Circuit Court of Appeals has held that, after making a proper *Terry*

---

[4]    The officer in *Terry* observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. *Wardlow,* at 125 (citing *Terry*, 392 U.S. at 5-6, 88 S.Ct. 186). All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a robbery. *Id. Terry* recognized that the officers could detain the individuals to resolve the ambiguity. *Id.*

[5]    In his written motion to suppress, Ferguson did not complain that his detention at the scene of the stop was of an extended duration so as to constitute an illegal detention under the Fourth Amendment. Likewise, he made no argument during the hearing which could be construed to raise the issue. Therefore, this Court does not address the issue.

stop, the police are within their constitutional authority to pat down a party and to handcuff him/her for their personal safety even if probable cause is lacking.  *United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000).   Handcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause.  *Id.* at 450.   The relevant inquiry is whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation.  *Id.*

In this instance, McAdams was aware that Sawyer had active warrants for her arrest.  He was also aware that Ferguson could produce no means of identification.  As a result of the destruction caused by Hurricane Rita, there were no working streetlights or other illumination and the area was absolutely dark.  McAdams was aware that looting and theft had been taking place in the immediate area and had received numerous calls from residents concerning suspicious vehicles in the area.  He was also aware that the nearby apartment complex which Ferguson was leaving was largely evacuated.  In short, McAdams was virtually alone in the area with Ferguson and Sawyer.  Finally, McAdams had a genuine concern about receiving assistance from other officers due to manpower constraints in the aftermath of the hurricane   Accordingly, the Court concludes that McAdams acted lawfully in handcuffing Ferguson and Sawyer.

### 3.      The Consent to Search

After handcuffing Ferguson and Sawyer, McAdams requested and received Sawyer's consent to search the vehicle.  Although ordinarily a person cannot complain about a violation of another person's constitutional rights, this Court must determine the voluntariness of Sawyer's consent to search.  *See Kelly,* 981 F.2d 1464, 1470 (5th Cir. 1993)(applying the voluntariness factors to passenger/owner's consent in considering the admissibility of the evidence against the driver of

the vehicle).   A search conducted pursuant to consent is one of the well-settled exceptions to the Fourth Amendment's warrant requirement.  *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir.1997), 523 U.S. 1036 (1998).  To be valid, a consent to search must be free and voluntary. *Kelly, id.*  The Government has the burden of proving, by a preponderance of th*e* evidence, that the consent was voluntary.  *Id.*

Voluntariness is determined from the totality of the circumstances surrounding the search. *Id.*  To determine whether consent was validly given, we ask whether consent was voluntary and whether it was an independent act of free will.  *United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006).  In determining whether the consent was voluntary, the Court considers: (1) the voluntariness of Sawyer's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of Sawyer's cooperation with the police; (4) Sawyer's awareness of her right to refuse consent; (5) Sawyer's education and intelligence; and (6) Sawyer's belief that no incriminating evidence will be found.  *Id.*  Although all the factors are relevant, none are dispositive.  *United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007).

As to the first factor, it was apparent that Sawyer was never free to go during the traffic stop. In fact, she was formally arrested for the outstanding warrants.  Therefore, this factor weighs against the Government.

A review of the testimony does not reveal any coercive police procedures.  There were no threats, promises, or coercion by McAdams.  He testified that he was not speaking loudly to Sawyer and he did not have his weapon drawn.  In addition, during the traffic stop, Sawyer was cooperative. She obeyed requests and appeared polite.  Therefore, factors two and three weigh for the Government.

As to the fourth factor, according to the evidence, McAdams did not inform Sawyer that she had a right to refuse consent.  This  weighs against the Government.  At the same time, the evidence about Sawyer's actions does not indicate that she lacked the education or intelligence to understand that she was giving McAdams consent to search her vehicle.  McAdams testified that she was well-dressed and cooperative.  This fifth factor weighs for the Government.

As for the sixth factor, it appears that the firearm and narcotics were readily found during the search.  This factor weighs against the Government.

Looking at all of the factors, and examining the totality of the circumstances, this Court concludes that consent was voluntarily given.  The consent was an independent act of free will and, therefore, this Court determines that Sawyer's consent was freely and voluntarily given.  Therefore, the officers' search and seizure of the single pill on the floorboard and the 9 mm pistol discovered underneath the passenger seat of the vehicle were based on a lawful consent to search.

Further, the record reflects that Sawyer gave McAdam's a general consent to search the vehicle.  Law enforcement officers are not required to separately request permission to search each container within a vehicle for which they have received consent to search.  *Florida v. Jimeno*, 500 U.S. 248, 252, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991).  Sawyer chose not to place any limitation on her consent to search which is evidence of general consent.  *See United States v. Crain,* 33 F.3d 480, 484 (5th Cir. 1994).  Sawyer's general consent to a request to search the vehicle reasonably extended to the backpack and the pink purse.  The record does not indicate that Sawyer or Ferguson chose to limit the search.  Therefore, the marijuana discovered in the backpack and the methamphetamine found in the wallet are also admissible.

**4.**   **Search Incident to Arrest at the Jail**

The Supreme Court developed the doctrine of search incident to arrest in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed.2d 685 (1969).  *United States v. Green*, 324 F.3d 375, 377 (5th Cir.); *cert denied* 540 U.S. 823 (2003).  The Supreme Court in *Chimel* held that an officer making a lawful custodial arrest may search the person in custody and the "area within his immediate control" into which he might reach in order to obtain a weapon or to destroy evidence. 395 U.S. at 763, 89 S. Ct. 2034.  *Id.*

The Supreme Court addressed the applicability of this doctrine to searches of automobiles in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed.2d 768 (1981).  *Id.* There, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460, 101 S.Ct. 2860.  *Id.*  The Supreme Court in *Belton* adopted this bright line rule to avoid case-by-case evaluations of whether the defendant's area of control within the automobile extended to the precise place where the policeman found the weapon or evidence.  *Id.*  The principle behind *Belton* and *Chimel* is to protect police officers and citizens who may be standing nearby from the actions of an arrestee who might gain access to a weapon or destructible evidence.  *Id.* at 378.

A search incident to arrest is lawful even when it is conducted at the place of detention after the defendant is arrested and is in custody.  *United States v. Edwards,* 94 S. Ct. 1234, 415 U.S. 800 (1974); *United States v. Castro,* 695 F.2d 674 (5th Cir. 1979).  Jail personnel were justified in ensuring that Ferguson had no weapons or narcotics which he would be able to carry into his jail cell.  "The safety of the custodians and the inmates required no less that this." *United States v.*

*Ruigomez,* 702 F.2d 61, 66 (5th Cir. 1983).  Therefore, evidence concerning the twenty-five (25)

MDMA ("Ecstasy") tablets found on Ferguson's person is admissible.

     **5.**    **Statements**

     Ferguson does not complain that any statements which he may have made were not

voluntary or that he was not adequately provided his Miranda warning.  He asserts that the search

was illegal and the statement was, therefore, "fruit of the poisonous tree".  As stated above, the

search and seizure of the items in the vehicle and on Ferguson's person were proper under the

Fourth Amendment.  Therefore, Ferguson was lawfully detained and arrested.  Any statements made

by him were not "fruit of the poisonous tree".

**E.**    **Conclusion and Recommendation of the Court**

     Accordingly, having considered the motions, responses, and case law, and based upon the

findings of fact and conclusions law stated herein, the undersigned magistrate judge recommends

that the District Court deny Defendant's *Motion to Suppress.* [Clerk's doc. #45].

**F.**    **Objections**

     Pursuant to 28 U.S.C. § 636(b)(1)(c), all parties are entitled to serve and file written

objections to the report and recommendation of the magistrate judge within ten (10) days of receipt

of this report.  Failure to file specific, written objections to the proposed findings of facts,

conclusions of law and recommendations contained within this report within ten (10) days after

service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed

findings, conclusions and  recommendations, and from  appellate review of factual findings and

legal conclusions accepted by the District Court except on grounds of plain error.  *See Thomas v.

Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415 (5th Cir. 1996)*

(*en banc*); 28 U.S.C. § 636(b)(1).  The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation.  *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 23rd day of October, 2007.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE